IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JEWELL LEE THOMAS, #2350417 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv421 |
| MICHAEL UPSHAW, ET AL | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Jewell Lee Thomas, a prisoner confined at the McConnell Unit within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The cause of action was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Thomas sues (1) Michael Upshaw, (2) Phillip Lucas, (3) Deana Barnes, (4) Bridgette Jurrells, (5) Sherall Johnson, (6) Christine Hyndman, (7) Elizabeth Tyson, (8) Alicia Dovel, (9) Brent Cain, (10) Bryan Collier, and (11) Carey Green. The present Report and Recommendation concerns Defendants Cain, Carter, Colier, Green, Johnson, Jurrells, and Lucas's motion to dismiss, (Dkt. #29), which was held in abeyance pending Thomas's amended complaint. The Report also concerns Defendants Upshaw and Tysons's motion to dismiss, (Dkt. #41).

For reasons explained below, the Court recommends that both motions be granted, and Plaintiff's claims be dismissed with prejudice. Thomas's factual allegations, pleadings, and attachments demonstrate that he failed to state claims upon which relief may be granted.

1

## I. Thomas's Allegations

By his own request, (Dkt. #50), the operative pleading in this lawsuit is Thomas's second amended complaint, (Dkt. #49). Generally, an amended complaint entirely supersedes and takes the place of the original complaint. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). In the interests of justice and given Plaintiff's *pro se* status, the Court also considers Thomas's first amended complaint, (Dkt. #14). Thomas raises claims concerning the Americans with Disabilities Act (ADA), Rehabilitation Act (RA), the Equal Protection Clause, the Eighth Amendment and medical deliberate indifference, and the failure to train/supervise. He also raises a claim regarding alleged conspiracy and policy violations.

While Thomas's amended complaint is convoluted and largely disjointed, the Court understands that Thomas states that he is a disabled individual, based on chronic pain related to his pelvic lateral tilt. He explains that he arrived at the East Texas Treatment Facility Center—specifically for the Substance Abuse Felony Punishment Facility (SAFPF)—on October 7, 2020, after being incarcerated in the Dallas County Jail and receiving his criminal sentence, (Dkt. #49, pg. 41, Thomas Step 1 grievance). Thomas attached a motion, filed by his attorney in his criminal case, which shows that he pleaded true to a motion to revoke his probation—and he was given two additional years of probation and ordered Thomas "to SAFPF."

Thomas explains that upon his arrival at the facility to begin the SAFP program, he reported his medical conditions by way of prison grievances and a sick-call-request. He contends that he suffers from "chronic pain syndrome," which "must be treated by a pain management physician or doctor" and is treated with narcotics and steroid injections, (Dkt. #49, pg. 41). He notes that his treatment was effective in the "free world." Thomas stated that he spoke with the Nurse Practitioner in October 2020, and he was prescribed "two over the counter tablets twice a day,"

which "were no good." *Id.* Because the treatment was ineffective and "inadequate," Thomas stresses that he was left in severe pain—and since his arrival at the facility, he has been unable to perform daily tasks as normal due to the pain. The Step 1 grievance indicates that Thomas requested a "medical discharge" from the program and for him to be sent "back to [his] county." *Id.* at pg. 39. He also asserts that on November 17, 2020, "a determination was made" to refer him to a pain specialist in Galveston, which he accepted.

Thomas attached further documents to his amended complaint, which are considered part of his complaint. *See Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *see also Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) ("Significantly, because of Clark's *pro se* status, our precedent compels us to examine all of his complaint, including the attachments."). On October 27, 2020, prison officials documented Thomas's disciplinary infraction for refusing to "attend a required treatment program, namely modified direct treatment program, by signing a program refusal," which Thomas indicated he was guilty of, (Dkt. #49, pg. 61). Subsequently, on December 18, 2020, while present at the SAFP meeting, prison officials removed him from the program because of his refusal to attend the program. The document indicates that Thomas stated that "I am refusing due to inadequate medical care for chronic pain, and mental health issues." *Id.* at pg. 62. Thomas specifically signed the document. *Id.* Thomas also filed the motion to revoke his probation/proceed with an adjudication of guilt stemming from Dallas County, which reads as follows:

**25.**　The Defendant, Jewell Lee Thomas III, failed to participate in the Substance Abuse Punishment Facility Program operated by the Institutional Division of the Texas Department of Criminal Justice and comply with all rules and regulations, attending all sessions and continuing in the program until successfully released from the Program or until the Court releases the defendant from the Program; removed from the program due to non-compliance and refusal to participate.

Dkt. #49, pg. 63.

## 1. Policy Violations

Thomas asserts that Defendants violated his rights under section 1983 by violating "state policy that should exclude offenders from participating in the SAFP [sic] program due to their pre-existing medical conditions," (Dkt. #14, pg. 1). He further states that "the crux of [his] argument is not that the Defendants policy is unconstitutional but instead that Defendants had no policy in place, that is, that there was a failure to adopt a policy," (Dkt. # 49, pg. 7). The failure to adopt a policy "triggered" the ADA violations—as Defendants failed to accommodate his limitations caused by his chronic pain syndrome by providing "meaningful access," which thereby triggered the need for a medical discharge from the SAFP program. He received an "administrative discharge," removed from the program, and sent to prison as a result.

## 2. ADA Claims

Thomas maintains that Defendants violated his rights under the ADA because he suffers from both physical and mental disabilities and was given an "administrative discharge" from the program rather than a medical discharge, thereby excluding him because of his disability. He also maintains that he was denied "meaningful access" to the program because of his chronic pain.

## 3. Equal Protection Claims

Thomas also asserts that Defendants violated his rights under the Equal Protection Clause, as "they knew that the plaintiff did not meet eligibility requirements to participate in the SAFP program due to the Plaintiff's disability." Instead, Defendants chose to discharge him from the program under an "administrative discharge" rather than a "medical discharge" like other prisoners diagnosed with "medical conditions undergoing acute chronic treatment in which interruption of continuity may jeopardize the patient's final outcome" and "any medical condition requiring

frequent office specialty medical services" outlined in the SAFP eligibility requirements, (Dkt. #14, pg. 4).

### 4. Eighth Amendment—Medical Deliberate Indifference

Thomas further contends that Defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs. Specifically, he argues that during his 90-day stint with the SAPF program, he "suffered significant and recurrent pain from his diagnosed lateral pelvic tilt," and that the "prison doctor" thought his condition was serious enough to require discharge and specialty pain management treatment, (Dkt. #14, pg. 4). He also notes that Defendant Upshaw was responsible for "delays" in receiving medical treatment—namely, the failure to provide "medical necessary pain management." *Id*. at pg. 13.

He further argues that Defendant Cain, as practice manager, knew through his prison grievances that he has complained about policy violations and his ineligibility to qualify for the SAFP program, but failed to communicate this to prison officials.

### 5. Retaliation Claims

Next, Thomas asserts that Defendants violated his rights under the First Amendment. He explains that he "engaged in protected conduct" by protesting against being subjected to discrimination and cruel/unusual punishment. He explains that he did not receive his "medical discharge" from the program and thus sent to prison—and adverse act.

### 6. Failure to Train/Supervise

Thomas argues that Defendants violated his rights by failing to train their subordinates "on how to identify and exclude potential candidates for program participation that have been diagnosed with medical conditions that would interfere with the continuity of the SAFP program,"

(Dkt. #14, pg. 8). He further states that a municipality may be liable for failing to adopt policies, which is deliberate indifference, (Dkt. #49, pg. 8), because it ultimately violated his rights.

### 7. Conspiracy

Thomas asserts that Defendants engaged in a conspiracy to deprive him of his constitutional rights. Specifically, he maintains that Defendants all agreed on his "administrative" discharge, which ultimately violated his rights.

## II. Defendants' Motions to Dismiss

In the first motion to dismiss, (Dkt. #41), filed by the TDCJ defendants under Rule 12(b)6), Defendants assert that Plaintiff failed to state claims upon which relief may be granted. Specifically, these Defendants maintain that Plaintiff failed to state claims, failed to show personal involvement, failed to state a physical injury, and further insist that they are entitled to qualified immunity.

Defendants Upshaw and Tyson similarly seek dismissal under Rule 12(b)(6), maintaining that Thomas failed to state a claim upon which relief may be granted for all of his policy claims and equal protection claims. Defendants insist that they were not responsible for determining who participates in the SAFP program, as TDCJ determines eligibility. In addition to other claims failing, they argue, Defendants also maintain that they are entitled to qualified immunity.

## III. Legal Standards

As an initial matter, Thomas is proceeding *pro se*. Accordingly, he is entitled to liberal construction and, "however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). While *pro se* litigants are held to less stringent standards than pleading filed by lawyers, they "must actually

argue something that is susceptible to liberal construction." *See Toole v. Peak*, 361 F. App'x 621, 621 (5th Cir. 2010).

The United States Court of Appeals for the Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**IV. Discussion and Analysis**

Thomas failed to state a claim upon which relief may be granted for all of his claims. The Court understands that Thomas was treated for his chronic pain and saw a pain specialist before his incarceration at the East Texas Treatment Facility to complete the SAFP program—which was part of his criminal sentence. Once there, prison officials provided pain medication that he insisted did not work—and as a result, Thomas refused to participate the in the SAFP program. This choice, because completion of the SAFP program was part of his sentence, resulted in a sentence to prison. However, Thomas's facts—as alleged—and his own attachments reveal no indication of any violation of his constitutional rights.

<u>1. Policy Violations and Failure to Supervise/Train</u>

Thomas insists that Defendants violated his rights through violating TDCJ's SAFP policy—Number SATOM 03.02-SAFPF CSCD—by providing him an "administrative" discharge rather than a "medical" discharge based on his alleged disabilities in connection with his pelvic lateral tilt. Thomas's own attachments reveal that he refused to attend the program and specifically requested that he be removed from the program because he was not receiving treatment he desired, namely, narcotic pain medication and/or a pain management specialist—as the pain medication provided to him at the facility was "no good." Thomas stresses, however, that the crux his "argument is not that the Defendants policy is unconstitutional but instead that Defendants had no policy in place, that is, that there was a failure to adopt a policy." He insists that Defendants are liable under *Monell*. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

As an initial matter, prison officials' failure to follow their own policies presents no constitutional violation under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("The claim is that the

mere failure of the TDC officials to follow their regulations was a constitutional violation. There is no such controlling principle."). Here, any prison or jail officials' failure to follow the SAPF policies or procedures by entering an "administrative" discharge, without more, presents no constitutional question. The Court understands that Thomas insists that this policy—or lack of a policy—ultimately violated his rights under the ADA and the Eighth Amendment; however, as will be explained below, he has not stated a claim for these violations upon which relief may be granted. Necessarily, then, Thomas's complaints about the policy fail to state a claim.

Moreover, as Thomas states, he argues not that the policy is unconstitutional—but, rather, that there was a failure to adopt a policy, (Dkt. #49, pg. 7). But Thomas never specifies what policy should have been in place instead. A municipal "policy" must be a deliberate and conscious choice by a municipality's policy-maker. *City of Canon, Oh. v. Harris*, 489 U.S. 378, 389 (1989). While a municipal policy-maker's failure to adopt a precaution can be the basis for section 1983 liability, such omission must amount to an intentional choice—not merely an unintentionally negligent oversight. *Id.* at 387; *see also Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). As Thomas points out, the failure to adopt a policy can constitute deliberate indifference when it is obvious that the likely consequences of not adopting a policy will be a deprivation of rights. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quotations and citation omitted).

Here, Thomas failed to plead any facts indicating that any omission—that is, failure to adopt a policy—was an intentional or conscious choice. And given Thomas's specific refusal to participate in the SAFP program as part of his sentence, he has also not pleaded facts that would show that it was obvious that Defendants' failure to adopt a policy would deprive him of his rights.

Turning to his failure to supervise/train claims, Thomas claims that supervisory Defendants "failed to supervise and train his/her subordinates on how to identify and exclude potential

candidates for the program participation that have been diagnosed with medical conditions that would interfere with the continuity" of the SAFP program, (Dkt. #14, pg. 8).

A claim under section 1983 concerning the failure to train or supervise requires Thomas to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *See Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 397 (5th Cir. 2017); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Importantly, if the alleged conduct stemming from the failure to train and/or supervise did not violate a constitutional right, the inquiry ends immediately—as relief under section 1983 requires demonstrating that a constitutional violation occurred. *See Allison v. Kyle*, 66 F.3d 71. 73 (5th Cir. 1995) ("[N]either habeas or civil rights relief can be had absent the allegation by the plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."); *see also Lytle v. Bexar County, Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

Here, as will be explained below, Thomas articulates no facts that would show that his constitutional rights were violated. He also pleaded no facts indicating that a causal link existed between the failure to train or supervise and the violation of his rights. Crucially, Thomas pleaded no facts suggesting that any Defendant was on notice of any pattern of constitutional violations stemming from an "administrative" versus a "medical" discharge, so as to show deliberate indifference in this context, Thomas "must point to a pattern of similar constitutional violations by untrained employees." *See McNeal v. LeBlanc*, 90 F.4th 425, 432 (5th Cir. 2024). He has provided no facts of any pattern of any constitutional violation. This claim should be dismissed.

Finally, under *Monell*, a local government may be sued under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2038, 56 L.Ed.2d 611 (1978); *see also Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) ("municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom."). Here, for many reasons explained below, Thomas wholly failed to articulate facts that would show that his rights were violated under the ADA/RA, the Eighth Amendment, or the Equal Protection Clause. His claims concerning various policy violations and any *Monell* claim against Defendants should be dismissed.

### 2. Eighth Amendment—Medical Deliberate Indifference

Thomas maintains that Defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs. Specifically, he argues that he was denied "meaningful access" to SAFP because he suffered significant and recurring pain during his 90-day stay at the facility. He explains that his pain was so severe that he could not walk, write, read, sleep, exercise, or engage in activities. Thomas insists that all Defendants were aware of a substantial risk to his health by virtue of his submitted sick-call requests, previous medical records, and grievances.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that

"a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming the district court's summary dismissal of Banuelos's lawsuit based on his medical records rebutting his claim of medical deliberate indifference).

Here, Thomas alleges that delays in providing pain medication, inadequate health screening procedures, and failing to comply with the SAFP policy constituted deliberate indifference. However, Thomas's own words and attachments reveal the opposite: He was routinely treated and prescribed medications, including medication for his pain. He was also treated for mental health.

(Dkt. #49-7, pg. 94). Thomas's attachments reveal that he was unsatisfied by the pain medication he was prescribed, which fails to state a claim. *See Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("Disagreement with medical treatment does not state a claim for Eighth Amendment difference to medical needs") (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (collecting cases)).

It is well-settled that mere disagreement with a course of treatment or dissatisfaction with medical treatment does not constitute deliberate indifference under the Eighth Amendment. *See Gobert*, 463 F.3d at 346; *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("Disagreement with medical treatment does not state a claim for Eighth Amendment difference to medical needs") (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (collecting cases)).

A delay in medical care or treatment can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm. See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013); *Irby v. Hinkle*, 2023 WL 2524447, at *4 (5th Cir. 2023). Thomas's dissatisfaction with the pain medication provided does not constitute deliberate indifference.

Similarly, Thomas's insistence that he be treated by a pain specialist (since his medications were allegedly not working) is also of no consequence because such insistence is merely disagreement with a type of treatment. *See Wilson v. McGinnis*, 651 F. App'x 263, 264 (5th Cir. 2016) ("These decisions are matters of medical judgment, and Wilson's mere disagreement with the course of treatment is not enough to qualify as deliberate indifference."); *see also Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) ("Blank's desire to see Dr. Sandknop more often amounts to a disagreement over his treatment, which, as discussed *supra*, does not rise to the level of deliberate indifference.").

The crux of Thomas's lawsuit concerns his desire for pain medication and to see a pain specialist. He repeatedly notes that he was previously treated with narcotics and steroid injections, which proved effective outside of incarceration. But it is well-settled that a prison's decision to discontinue the use of narcotic pain medication—which had been previously prescribed—and to, instead, substitute pain medication that is not a narcotic does not amount of deliberate indifference. *See Baez v. I.N.S.*, 2007 WL 2438311, at *2 (5th Cir. Aug. 22, 2007) (unpublished) (the substitution of non-narcotic pain prescription because of prison policy prohibiting narcotics fails to state a claim upon which relief may be granted); *Williams v. Berry*, 273 F.3d 1096, 2001 WL 1085197, at *3 (5th Cir. Sept. 7, 2001) (per curium); *Thomas v. Seago*, 2008 WL 4414371, at *3 (S.D. Tex. Aug. 23, 2008) (unpublished) (the substitution of non-narcotic medication for Tylenol #3 by unit doctor due to the fact that narcotics cannot be kept on person is not deliberate indifference).

Thomas's own attachments to his amended complaint, (Dkt. #49-2; #49-3; #49-5; #49-7), reveal that he has received a substantial quantum of healthcare—including various prescriptions for his pain, (Dkt. #49, pg. 70; 79). The attachments reflect that Thomas sought narcotic treatment but was informed that "narcotic pain medication is not available at the treatment facilities," (Dkt. #49, pg. 41). Thomas's allegations indicate no deliberate indifference because unsuccessful treatment, a prisoner's disagreement with a course of treatment, and the decision to substitute non-narcotic pain medication for a narcotic do not constitute deliberate indifference. Thomas's claims for deliberate indifference to his serious medical needs against all Defendants should be dismissed for the failure to state a claim upon which relief may be granted.

### 3. ADA/RA

Next, Thomas argues that Defendants violated his rights under the ADA/RA. He explains that he has been diagnosed with a lateral pelvic tilt "associated Regional Complex Chronic Pain Syndrome" and lymphedema. His conditions limit him from sitting, walking, bending, standing, climbing, sleeping, and other conditions coupled with his "mental health disabilities," (Dkt. #49, pg. 12). By failing to provide him with meaningful access to the SAFP program because he was not getting the adequate pain relief he received in Dallas County, he requested a "medical discharge" from the program.

Thomas attached several of his sick-call-requests and grievances, wherein he repeatedly explained that he was previously treated with narcotics, notes his chronic pain, explains that the pain medicine given to him was not working, and his request for a "pain doctor" in Galveston, (Dkt. #49). In one particular sick-call-request, dated October 2020, Thomas specifically stated that he requires narcotics for his pain:



Dkt. #49, pg. 82.

As an initial matter, neither the ADA nor the RA permit individual capacity claims or damages. *See* 42 U.S.C. §§ 1213(1)(B), 12132 (defining public entity to only include "any department, agency, … or other instrumentality of a State); *Martinez v. City of Buda, Tex.*, 2018 WL 837609, at *6 (W.D. Tex. Feb. 13, 2018) (collecting cases holding that individual defendants cannot be sued for violating the ADA); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). Therefore, Thomas's individual capacity claims are without merit.

The ADA and the RA are judged and evaluated under the same legal standards, and the same remedies are available under both. *Valentine*, 993 F.3d at 289 (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)). To set out a claim under Title II of the ADA, a plaintiff must prove:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Id.*; *see also Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020); 42 U.S.C. § 12132. The Supreme Court has held that modern prisons conduct many "services, programs, or activities" that confer "benefits" on prisoners—such as recreational activities, medical services, and vocational programs. *Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Moreover, the ADA and RA "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Bennet-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). In order to prevail on a claim concerning alleged failure to accommodate, the plaintiff must prove (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations. *See Smith*, 956 F.3d at 317 (citing *Ball*, 792 F.3d at

596). The entity must understand the limitations a plaintiff experienced as a result of his disability; the burden is on the plaintiff to identify the disability, the limitation, and to request accommodation in "direct and specific" terms. *See Valentine*, 993 F.3d at 290;

A prison's failure to accommodate the known limitations of persons with disabilities may constitute disability discrimination; however, a crucial element is proof of the disability and that its limitations were known by the prison. *See e.g.*, *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235-36 (5th Cir. 2017) ("Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances."). Mere knowledge of the disability is not enough—the "provider must also have understood the limitations the plaintiff experienced … as a result of that disability." *Id*. (internal quotations and citation omitted).

Even if a plaintiff demonstrates the failure to accommodate, or even disability-discrimination, he must show intentional discrimination. *See Smith*, 956 F.3d at 318. Deliberate indifference does not suffice. *Id*.; *see also Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002) ("[I]n order to receive compensatory damages for violations of the Acts, a plaintiff must show intentional discrimination."); *Douthit*, 2022 WL 5249152, at *2 ("To recover compensatory damages under the ADA, a plaintiff must make a showing of intentional discrimination.")

The Fifth Circuit has not extended ADA and RA claims to include prisoners' claims regarding poor medical treatment or inadequate facilities. *See Nottingham v. Richardson*, 499 App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. There is no evidence that the allegedly improper action of leaving Nottingham on the floor of the transit van had any connection to his alleged disability."); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this

opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities."). Instead, the prisoner must show that he was treated differently because of his disability. *See Nottingham*, 499 F. App'x at 377 ("There is no indication that he was treated differently because of his disability.").

Here, Thomas pleaded no facts suggesting that any Defendant violated his rights under the ADA. First, Thomas has sued the wrong Defendants. It was not any named Defendant who sentenced him to prison after he refused to participate in SAFP. As mentioned, Thomas has no constitutional right to dictate the type of treatment for his pain that he receives. *See Gobert*, 463 F.3d at 346 (mere disagreement with a course of treatment or dissatisfaction with medical treatment does not constitute deliberate indifference under the Eighth Amendment). Moreover, his own attachments include the state's motion to revoke probation because of his refusal to participate in the court-ordered program. Thomas has pleaded no facts indicating that receiving a "medical discharge"—even if such thing existed—would have kept him from imprisonment.

Furthermore, Thomas's own attachment, (Dkt. #49, pg. 111), indicate that prison officials did not perceive Thomas to have a disability or limitations. In his own medical record in which Thomas claimed a disability, the medical provider explained to Thomas that "disability is not a medical diagnosis but an assessment of an individual's ability to perform certain function based on a multitude of criteria," and that—with respect to his "claims to disability," there was "no indication for medically unassigned restriction." *Id*. Such medical records indicate that prison officials did not designate him as disabled; in other words, if prison officials did not designate him as disabled, then it stands to reason that prison officials had no knowledge of any disability or its limitations.

While Thomas insists that his medical records from Dallas and his grievances placed Defendants on notice of his medical history, (Dkt. #49, pg. 13), such fact implies that Defendants were aware that he had medical conditions—not that he was disabled.

Moreover, Plaintiff's grievances evince his dissatisfaction with the medical services provided to him, including a prescription for "over the counter tablets," (Dkt. #49, pg. 40)—and his insistence that his pain can be treated with narcotics and steroid injections. But, as mentioned, the Fifth Circuit has not extended ADA and RA claims to include prisoners' claims regarding poor medical treatment. *See Nottingham*, 499 App'x at 377.

Turning to Thomas's contention that he was denied "meaningful access" to the program because of his pain and his argument that the medications provided were "inadequate," such fails. The records show that Thomas was provided at least two types of pain medication before he decided to refuse to participate in the program. But the bottom line is that Thomas decided to stop attending the program based on medical treatment he believed he should be receiving—which he has no constitutional right to dictate. He has provided no facts as to show that he was denied meaningful access to the program constituting an ADA violation.

Even if Thomas was designated as disabled, he has articulated no facts indicating that Defendants intentionally discriminated against him <u>because</u> of any disability. As mentioned, Thomas elected to refuse to participate in the SAFP—and his attachments show that any refusal would be subject from removal from the program. Thomas's own documents show that the State filed a motion to revoke probation or proceed with an adjudication of guilt because he failed to participate in SAFP, which was a part of his criminal sentence, (Dkt. #49-6). In these ways, he has not articulated facts indicating that receiving an "administrative" discharge was because of his disability rather than his outright refusal to participate in the court-ordered program. *See Davidson*

*v. Tex. Dep't of Crim. Just. Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) ("Davidson's ADA claim lacks merit because he has not alleged or shown that he was adversely treated solely because of his handicap or mental illness."); *see also Hay v. Thaler*, 470 F. App'x 411, 418, 2012 WL 2086453, at *4 (5th Cir. 2012) (dismissing prisoner's ADA claim because he failed to show that the alleged discrimination was by reason of his disabilities).

Thomas maintains that the discrimination was "intentional" because the Defendants were put on notice of his medical conditions and pain. This does not suggest intentional discrimination because, or by reason of, a known disability. Furthermore, while Thomas suggests that "other patients" diagnosed with medical conditions requiring chronic treatment and/or medical conditions requiring frequent offsite specialty services received a "medical" discharge rather than an "administrative discharge," he provides no further elaboration or specifics. In this way, he has not articulated facts showing that he was treated differently than similarly situated prisoners. Conclusory allegations of intentional discrimination will not suffice.

### 4. Equal Protection

Thomas maintains that Defendants violated the Equal Protection Clause by providing him an "administrative" discharge rather than a "medical" discharge from SAFP as other disabled prisoners. In other words, Thomas alleges an equal protection violation based on the type of discharge he received from SAFP.

In order to establish a violation of the Equal Protection Clause, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *See Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *see also Gallegos-Hernandez v. United States*, 688 F.3d 190, 195

(5th Cir. 2012) ("To establish an equal protection claim, Gallegos must show that two or more classifications of similarly situated persons were treated differently.").

A plaintiff alleging disparate treatment must identify a discriminatory purpose, as that "implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). Crucially, a plaintiff must allege specific facts supporting a claim of discrimination—as opposed to his or her personal belief that discrimination occurred. *Id*.

Here, as explained above, Thomas fails to allege facts that would show that his "administrative" discharge from the program stemmed from discriminatory intent. His own attachments demonstrate that his discharge stemmed from his refusal to participate in the program due to his contention that he was receiving inadequate medical treatment for his pain. Furthermore, Thomas's implicit argument that disabled prisoners presumably received a "medical" discharge is conclusory and pure speculation—and does not account for Thomas's refusal to particulate in his court-ordered sentence for SAFP at the East Texas Treatment facility.

To the extent that Thomas argues for his Equal Protection Claim under a "class of one" theory, such claim fails for similar reasons. To succeed on a "class of one" theory, Thomas must show he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Conclusory allegations are insufficient to support "class of one" discrimination allegations. *Bell v. Woods*, 382 F. App'x 391, 2010 WL 2545421 (5th Cir., June 18, 2010 (citing *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (vague allegation that non-drug addicts received better medical care did not set out an equal protection violation));

*see also Adkins v. Kaspar*, 393 F.3d 559, 566 (rejecting prison discrimination claim based on "bald, unsupported, conclusional allegations").

Here, Thomas's allegations regarding discrimination are entirely conclusory mirroring bald assertions. While he contends that "other patients that were diagnosed with "medical conditions undergoing acute or chronic treatment in which interruption of continuity may jeopardize the patient's outcome" and "any medical condition requiring frequent office specialty medical services" were excluded but not [Thomas]" and that "[t]hese other patients were similarly situated," (Dkt. #14, pg. 11), are conclusory—as he offers only his own statements in support, which neither indicate a basis for Defendants' personal involvement nor does they set out facts showing that any such differential treatment had no rational basis. Under rational basis review, differential treatment must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts which could provide a rational basis for the classification. *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). Indeed, a rational and reasonable basis exists for the administrative discharge: Thomas's refusal to participate in the program, which was part of his criminal sentence.

Additionally, Thomas has not indicated—nor do his attachments suggest—that the decision to provide an "administrative" discharge as opposed to "medical" from the SAFP was anything other than based on a subjective, individual assessment. A number of federal courts have held that class of one equal protection claims are not viable when based upon individualized assessments of prisoners. *See, e.g.*, *Dawson v. Norwood*, 2010 WL 2232355 (W.D. Mich., June 1, 2020) (rejecting class of one equal protection claim that he was treated differently from other inmates in administrative segregation because "the class of one equal protection theory has no place in the prison context where a prisoner challenges discretionary decisions regarding security

classifications and prisoner placement"); *Upthegrove v. Holm*, 2009 WL 1296969 (W.D. Wis., May 7, 2009) (prisoner's class of one equal protection claim was properly dismissed "in light of current rulings suggesting that class of one equal protection claims are not cognizable in such an individualized and discretionary setting as the prison setting"); *Striz v. Collier*, 2020 WL 7868102 (S.D. Tex., November 24, 2020), *aff'd* slip op. no. 20-40878, 2022 WL 1421834 (5th Cir., May 5, 2022).

Here, evidenced by Thomas's own documents, he elected to forgo participating in the SAFP program for which he now complains. The docket reflects that the SAFP board recommended that he be removed from the program based on his refusal to participate. Such an individual assessment of Thomas's circumstances—his refusal to participate in the court-ordered program, even by his own request—is not a basis for a "class one" discrimination claim. Thomas's Equal Protection claims against all Defendants should be dismissed.

### 5. Retaliation

Thomas also contends that Defendants retaliated against him by failing to provide him with a "medical" discharge from SAFP as requested. He states that he was then sentenced to prison, which "flowed" from his protest to acquire a "medical" discharge. Thomas further insists that he vehemently protested against being subjected to cruel and unusual punishment as well as policy violations.

Federal Courts view prisoners' retaliation claims "with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1164-66 (5th Cir. 1995). To prevail on a section 1983 claim for First Amendment retaliation, Thomas must show that "(1) [he] was engaged in a constitutionally protected activity[;] (2) the defendant's actions caused [him] to suffer an injury that would chill a

person of ordinary firmness from continuing to engage in that activity[;] and (3) the defendant's adverse actions were substantially motivated [by] the constitutionally protected conduct." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (citing *Keenan*, 290 F.3d at 259). The second element requires some showing that "the plaintiff's exercise of free speech has been curtailed." *Keenan*, 290 F.3d at 259.

The Fifth Circuit most recently found that in order for a prisoner to succeed on a retaliation claim, the prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Streater v. Davis*, 2022 WL 10362714, at *1 (5th Cir. Oct. 18, 2022) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). To show causation, "an inmate must allege the violation of a constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident … would not have occurred." *Ancar v. Robertson*, 2022 WL 1792535, at *3 (5th Cir. June 2, 2022) (quoting *Woods*, 60 F.3d at 1166).  In *Streater*, the Court determined that Streater failed to allege causation because, in part, "he failed to allege facts to allow the inference that he was transferred because of his lawsuit." *Id*.

Here, Thomas has articulated no facts that would show that any Defendant retaliated against him. As the Defendants argue, he has not provided a chronology of events from which retaliation could be inferred.

Even more fatal to the claim, Thomas's allegations and attachments indicate that he cannot show causation. In other words, he has not shown that but for an "administrative" discharge, he would not have been sentenced to prison. As previously explained, the record reflects that Thomas specifically sought removal from the program and refused to participate. Completion of the program was part of his sentence. As a result, he cannot show—and has pleaded no facts

suggesting— that if he would have received a "medical" discharge rather than an "administrative" discharge, he would not have been sent to prison. Thomas's retaliation claim fails.

### 6. Conspiracy

Thomas maintains that by signing "off" on the "administrative" discharge, Defendants conspired to interfere with his constitutional rights through equal protection of the laws or equal privileges. With respect to a civil conspiracy, Thomas must prove an actual deprivation of a constitutional right. *See Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). "The elements of civil conspiracy are the following: (1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Importantly, mere conclusory allegations of a conspiracy—absent reference to material facts—do not state a cause of action under section 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (*en banc*).

Thomas has set forth no facts that would show Defendants engaged in a civil conspiracy to violate his constitutional rights. As explained above, he has not shown the deprivation of a constitutional right. His Eighth Amendment, ADA/RA, retaliation, policy violation, and Equal Protection claims all fail to state a claim upon which relief may be granted. His conspiracy claim, then, necessarily fails. Similarly, Thomas failed to provide specific facts that would show Defendants acted in concert with specific intent to deprive him of a constitutional right— particularly because he specifically refused to participate and his claims present nothing more than his disagreement with the type of medical treatment given. Simply stating that the Defendants' "signed off" on his "administrative" discharge, (Dkt. #14, pg. 34), is insufficient.

7. Qualified Immunity

Defendants invoke qualified immunity. Thomas has the burden to demonstrate that the defense of qualified immunity does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020); *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2022). Conclusory allegations are insufficient to overcome the defense. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643-44 (5th Cir. 2014); *see also Edmiston v. Borrego*, 75 F.4th 551, 561 (5th Cir. 2023) (rejecting Plaintiffs' conclusory statement).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, Thomas has not identified a constitutional violation against any name Defendant. Therefore, Defendants are entitled to qualified immunity.

**V. Conclusion**

A review of Thomas's pleadings, attachments, and Defendants' motions to dismiss reveal that Thomas failed to state claims upon which relief may be granted. His allegations and attachments reveal his dissatisfaction with the medical treatment he received in prison and his refusal to participate in his court-ordered sentence to complete the SAFP program. Thomas has

identified no constitutional violation, and provided no facts indicating Defendants violated his rights. The motions to dismiss should be granted, and this proceeding should be dismissed.

<u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that Defendants' motions to dismiss, (Dkt. #29, #41), be granted. The Court recommends that Plaintiff's claims against all Defendants be dismissed with prejudice for the failure to state a claim upon which relief may be granted.

Within fourteen (14) days after receipt of the magistrate judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 19th day of July, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE